

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

September 19, 1961

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Dear Mr. Calvert:

Opinion No. WW-1141

Re: Exemption from inheritance
tax of devise to an Okla-
homa charitable trust
under submitted facts.

You have requested that we advise you as to whether a de-
vise to an Oklahoma charitable trust is exempt from an inheritance
tax by virtue of that portion of Article 14.06, 20-A, Tax.-Gen.,
Vernon's Annotated Texas Statutes, which reads as follows:

"Provided, further, that if the
property so passing is to or for the
use of a religious, educational, or
charitable organization which con-
ducts its operations on a regional
basis, one such region of which in-
cludes the State of Texas, or any
part thereof, then a bequest, devise
or gift to be used within such re-
gion shall be deemed to be used
within this state.

"For purposes of this paragraph
a region shall comprise not more
than five contiguous states, either
in whole or in part, one of which
is the State of Texas.

"For purposes of this paragraph,
a religious, educational, or chari-
table organization shall include,
but not be limited to, a youth pro-
gram of physical fitness, character
development, and citizenship train-
ing or like program."

In connection with your request you have advised us of
the following facts. Charles Morton Share, hereinafter referred
to as the decedent, died June 13, 1959, a resident of Woods County,
Oklahoma. By the residuary clause of his will, the decedent de-
vised Texas real property, valued at $596,361.00, to the "Charles

Morton Share Trust."

Prior to his death, the decedent had created this chari-
table trust in the State of Oklahoma.  The trust purposes, as
stated in the Trust Agreement, are for general charitable pur-
poses.  The Trust Agreement does not contain any geographical
limitations on the expenditure of the trust funds; nor does it
prescribe any particular method of geographical operation.  On
the other hand, there is no limitation in the Trust Agreement
which would prevent the Trustees from conducting their operations
on a regional basis.  Indeed, in addition to their general powers,
the Trustees are specifically authorized to engage or employ any
persons they may desire to engage or employ for the performance
of any services to the Trust, including an Executive Director.
The Trustees are also expressly authorized to erect such buildings
as they may deem advisable on real property in any location.
Further, the Trustees are authorized to execute all instruments
necessary or proper for the accomplishment of the purposes of
the Trust.  The Trust Agreement does contain the following pro-
vision in Section 2 of Article VI:

>"This agreement is executed and
>delivered in the State of Oklahoma;
>the situs shall be in that State;
>and it shall be governed by, and
>construed and administered in ac-
>cordance with the laws of that
>State."

The Board of Trustees is required to file annual reports
in the District Court of Woods County, Oklahoma and furnish copies
of said reports to the Attorney General of the State of Oklahoma.

The Board of Trustees have agreed to execute a Resolution
for the purpose of complying with the provisions of Article 14.06
above quoted and obtaining an exemption from an inheritance tax.
Specifically then, the question which you have submitted to us
is whether the Resolution, if executed, will effectuate exemption
from an inheritance tax.  The Resolution reads as follows:

>"RESOLUTION OF THE BOARD OF TRUSTTES OF THE
>CHARLES MORTON SHARE TRUST ADOPTED AT
>SPECIAL MEETING HELD AUGUST __, 1961
>
>"WHEREAS, Charles Morton Share died tes-
>tate on June 13, 1959, and was a resident
>of the City of Alva, County of Woods, State
>of Oklahoma, at the time of his death and
>owned property situated within the State of

Oklahoma and the State of Texas and
other states; and

"WHEREAS, the Charles Morton Share
Trust is the principal beneficiary of
the estate of Charles Morton Share, de-
ceased, under his last will and testament,
and is the devisee and legatee of all
property owned by the deceased stiuated
in the State of Texas, together with
other property situated in other states;
and

"WHEREAS, the last will and testament
of Charles Morton Share, deceased, has
been duly probated in Cause No. 3569 in
the County Court of Woods County, Okla-
homa, the decree of distribution having
been entered by said Court on June 27,
1961, and said decree of distribution
being now a final order; and

"WHEREAS, the property of the estate
situated within the State of Texas is
now subject to temporary administration
proceedings in the County Court of
Ochiltree County, Texas, Cause No. 793,
and has a value of approximately Six
Hundred Thousand Dollars ($600,000.00);
and

"WHEREAS, the said Charles Morton
Share Trust is an organization estab-
lished by the said Charles Morton Share
solely for charitable purposes, as evi-
denced by a certain trust indenture dated
June 12, 1959, and hereinafter referred
to as the 'Trust' and the Board of Trustees
of which is hereinafter referred to as
the 'Board'; and

"WHEREAS, said Texas property consti-
tutes a substantial portion of the estate
of Charles Morton Share, deceased, and
has received and will continue to receive
the protection of the laws and government
of the State of Texas and the Board there-
fore recognizes a moral obligation to ex-
pend and use said income exclusively with-
in a geographical area including the State

of Texas to the end that said expenditures will effect a substantial benefit to the people of Texas; and

"WHEREAS, in order to act upon its desire to expend the income from the Texas property within a geographical area including the State of Texas and for the additional purpose of availing itself of a legal exemption from payment of inheritance taxes to the State of Texas under the provisions of Article 14.06, Title 122-A, Revised Civil Statutes of Texas, said Board at a special meeting held December 28, 1960, adopted a resolutation whereby it irrevocably committed funds accruing to the Trust from the Texas property for charitable use and expenditure within the geographical boundaries of a region composed of the States of Texas and Oklahoma and bound itself to keep books and records separately accounting for the income derived from said Texas property; and

"WHEREAS, administration of the Texas property in Cause No. 793 in the County Court of Ochiltree County, Texas, will be closed as soon as practicable after determination of the inheritance tax liability, if any, of the estate of Charles Morton Share, deceased, to the State of Texas, and whereas, on termination of said administration proceedings the Texas property shall be transferred to the Board and operations of the charitable trust will then begin on a regional basis within the region comprised of the States of Texas and Oklahoma; and

"WHEREAS, prior to the determination of the applicability of the provisions of said Article 14.06, above referred to, the appropriate officials of the State of Texas have requested of the Board certain assurances with respect to its manner of operation of said

trust on a regional basis so as to
enable said officials to accurately
determine whether said estate of
Charles Morton Share, deceased, is
in fact exempt from the inheritance
tax of the State of Texas; and

"WHEREAS, the Board desires to
make said assurances to said offi-
cials of the State of Texas,

"NOW, THEREFORE, IT IS HEREBY RESOLVED:

"That not less than Five Thousand
Dollars ($5,000.00) in any one fis-
cal year during the period of ten
fiscal years immediately following
the commencement of regional opera-
tions nor in the aggregate not less
than One Hundred Thousand Dollars
($100,000.00) during such period
shall be expended and disbursed by
the Board for charitable purposes
within the geographical limits of
the State of Texas; and

"BE IT FURTHER RESOLVED that for
the purpose of providing a convenient
method for the appropriate authorities
of the State of Texas to ascertain
whether compliance with this irrevocable
commitment is in fact being made, a
copy of each of the annual reports
required to be filed in the District
Court of Woods County, Oklahoma,
under the provisions of Article V
of said trust agreement, shall be
sent by certified or registered
United States mail to the Attorney
General of the State of Texas,
within five (5) days after the date
on which each such report shall be
filed in the District Court of
Woods County, Oklahoma; and

"BE IT FURTHER RESOLVED that as
soon as practicable after the com-
mencement of regional operations the
Board shall designate one or more
persons, residents of Texas, as its

agent or agents for the purpose
of according and facilitating
contact with the Board, screening
applications for benefits, making
recommendations, and locally facili-
tating the disbursement of funds
to charitable institutions and
facilities located within the
State of Texas; and

"BE IT FURTHER RESOLVED that
jurisdiction of said Trust and
its Board and venue for trial of
any action at law or suit in equity
which may be brought by the State
of Texas through its Attorney
General or other appropriate offi-
cial for any alleged violation of
the letter or spirit of this resolu-
tion shall lie, and by agreement is
hereby vested, in any court of com-
petent jurisdiction situated with-
in the boundaries of Travis County,
Texas; and

"BE IT FURTHER RESOLVED that no
donation or contribution in any
form whatever shall be made to any
charitable institution or facility
nor shall any charitable facility
be erected from funds created by
the Texas properties which excludes
from its benefits, bounty or opera-
tion residents or citizens of the
State of Texas because of such
residency or citizenship.

"BE IT FURTHER RESOLVED that
the appropriate officials of the
State of Texas and particularly
its Attorney General and Comp-
troller shall and may rely upon
the truth in fact of all recita-
tions of fact hereinabove set
forth; and

"BE IT FURTHER RESOLVED that
all terms of this resolution shall
remain forever irrevocable; and

"BE IT FURTHER RESOLVED that
copies of the Trust Agreement dated
June 12, 1959, the Resolution of
the Board of Trustees adopted on
December 28, 1960, and of this
Resolution, all duly certified as
authentic copies, shall forthwith
be furnished to the Attorney General
of the State of Texas."

At the outset, we are faced with the question of whether
a charitable organization must be operating on a regional basis
at the date of the decedent's death in order to be entitled to
exemption. Since in that portion of Article 14.06[1] which imme-
diately precedes the provisions we are here considering, exemp-
tion is allowed where there is an irrevocable commitment for
use exclusively within this State subsequent to the date of de-
cedent's death and prior to the payment of the tax, we have con-
cluded that it would be inconsistent with the spirit of the sta-
tute to require that the charitable beneficiary be operating on
a regional basis at the date of the decedent's death if regional
operations are effectuated prior to the payment of the tax.

The second question is whether the proposed Resolution
and the plan of operations set forth therein constitutes "opera-
tions on a regional basis" within the meaning of the statute.
We think that the Legislative history of Article 14.06, formerly
Article 7122, V.C.S., is pertinent to a determination of this
question. Prior to its amendment in 1955, Article 7122 had pro-
vided an exemption for property passing "to or for the use of
any religious, educational or charitable organization when such
bequest, devise or gift is to be used within this State."

This provision had been construed by our courts as re-
quiring the limitation to use within this State to be expressed
in the will, even though the charitable beneficiary irrevocably
committed the devise and bequest to use within this State sub-
sequent to the death of the decedent and prior to the payment
of the tax. Presbyterian Church in the U. S. v. Sheppard, 198
S.W.2d 282, (Tex.Civ.App., 1946, error ref., n.r.e.).

In 1955, Article 7122 was amended by providing, in effect,
that property passing to religious, educational or charitable
organizations could gain exemption from inheritance taxes, even
though the instrument effectuating transfer did not require that

---

[1] This portion of the statute is more fully discussed hereafter.

the charitable gift be used within this State, by irrevocably
committing such gift to use within this State prior to the pay-
ment of inheritance taxes. [2]

The decision in the Presbyterian Church case, supra, was
based on the proposition that the tax accrued as of the date of
death of the decedent and that therefore any subsequent limita-
tion as to use within this State could not effectuate exemption.
The evident purpose of the 1955 amendment was to allow exemption
for charitable devises, bequests and gifts if this State will
receive benefit therefrom, even though the instrument effectuating
the transfer did not itself require that the charitable devise,
bequest or gift be used within the State.  Mr. Justice Norvell
recognized the "benefits" doctrine as the basis for exemption
under our statute even prior to the 1955 amendment.  In G.A.C.
Halff Foundation v. Calvert, 281 S.W.2d 178 (Tex.Civ.App. 1955,
error ref., n.r.e.), he stated at page 181:

> ". . .The Legislature has thus
> decided that the greater good may
> be served by exempting certain pro-
> perty from taxation, considering
> the use to which it is dedicated.
> A use of property which alleviates
> a burden which the State or its
> political subdivisions would other-
> wise necessarily bear at public ex-
> pense, or a use thereof which ful-
> fills or accomplishes the generally
> accepted charitable objectives of
> the people of the State, is recog-
> nized as a proper subject of tax
> exemption by specific legislative
> enactments. . . ."

In 1959, the 56th Legislature further enlarged charitable
exemptions by extending the geographical limitations on use and
thereby departed from the former concept that exemption would be
accorded charitable devises, bequests and gifts only if their
use was limited to this State.  Some remnants of the doctrine of
benefits remain since the State of Texas must constitute a part
of the region which is the recipient of the charitable bequest,
devise or gift.  The Legislature did not see fit to provide any
yardstick for measuring the amount of benefits which this State
should receive from the charitable organization operating on a
regional basis; yet it is evident that the Legislature did not

---

[2] Senate Bill 266, Acts 1955, 54th Leg., Chapter 389, p. 1032.

intend to accord an exemption for all charitable bequests, devises or gifts since this regional exemption provision is limited to regions of not more than five contiguous states, either in whole or in part, one of which is the State of Texas. Therefore, necessarily the statute contemplates that this State receive some benefit before exemption will be allowed. Since we have no fixed legislative standard to use as a guide, we are of the opinion that each particular case must rest upon its own facts, and that if the facts show that this State will receive substantial benefit as a result of the regional operations of the charitable organization, exemption should be accorded. We turn, therefore, to an examination of the benefits which will flow to this State if the proposed Resolution is adopted.

The Resolution recites that the Texas property has a value of approximately $600,000.00. You have advised us that if exemption is not allowed, the Trust will owe an inheritance tax in an amount of approximately $71,000.00.

The specific benefits guaranteed by the resolution are the following:

(1) ". . .the Board recognizes a moral obligation to expend and use said income /‾from the Texas property‾/ exclusively within a geographical area including the State of Texas to the end that said expenditures will effect a substantial benefit to the people of Texas; . . ."

(2) The Board has irrevocably committed funds accruing from the Texas property for charitable use and expenditure within the geographical boundaries of a region composed of the State of Texas and Oklahoma and has further bound itself to keep books and records separately accounting for the income derived from the Texas property.

(3) The Board has obligated itself to expend ". . .not less than Five Thousand Dollars. . . in any one fiscal year during the period of ten fiscal years immediately following the

> commencement of regional opera-
> tions nor in the aggregate not
> less than One Hundred Thousand
> Dollars. . .during such period. . ."
> within the State of Texas.
>
> (4) The Board has guaranteed
> that no charitable facility will
> be erected from funds created by
> the Texas properties nor will any
> donation or contribution be made
> from such funds to any charity
> which excludes from its benefits
> residents of the State of Texas
> because of such residency."

Under the terms of the resolution, the Board plans to commence regional operations by designating "one or more persons, residents of Texas, as its agent or agents for the purpose of according and facilitating contact with the Board, screening applications for benefits, making recommendations, and locally facilitating the disbursement of funds to charitable institutions and facilities located within the State of Texas; . . ."

As a further evidence of the Board's good faith in executing the Resolution in question, the Board has agreed to furnish to the Attorney General of the State of Texas a copy of each of the annual reports which the Trust is required under the provisions of the Trust Agreement to file in the District Court of Woods County, Oklahoma. The Board further agrees that should any suit be brought by the State of Texas for any violation of the letter or spirit of the proposed Resolution, ". . .jurisdiction of said Trust and its Board and venue. . .of any action . . .shall lie... .in any court of competent jurisdiction. . ." in Travis County, Texas. The terms of the Resolution are declared to be irrevocable.

In view of these guarantees, we can only conclude that the State of Texas will receive substantial benefit from the regional operations of the Trust.

Although the Board in the Resolution adopted in December, 1960, has created three other regions in addition to the region consisting of Texas and Oklahoma, no evidence of the Trust's operations within these regions has been submitted to us; and we will therefore consider whether regional operations within the single region of Oklahoma and Texas satisfy the requirements of the statute. The statute refers to a charitable organization "which conducts its operations on a regional basis, one such region of which includes the State of Texas, or any part thereof.. . ."

Although national organizations operating on a regional basis are clearly within this provision, we do not regard the last quoted portion of the statute as requiring the existence of more than one region as a requisite to coming within statutory meaning of "operations on a regional basis". Here again, the guide to the interpretation of the statute should be the test of benefits to this State; and if the phrase "one such region of which includes the State of Texas, or any part thereof, . . ." be interpreted as requiring the existence of a national organization divided into regions, or even an organization not national in scope but conducting operations in more than one region, the "benefits" test becomes meaningless. It can make no difference whether there is more than one region since no benefits would accrue to the State by virtue of the existence of other regions.

## S U M M A R Y

A charitable organization need not be operating on a regional basis at the date of the decedent's death in order to gain exemption from an inheritance tax under Article 14.06, 20-A, Tax.-Gen., V.A.T.S., if bona fide regional operations are commenced prior to the payment of the tax. Operations on a single regional basis satisfy the requirements of the statute if the region includes the State of Texas, or any part thereof, and is comprised of not more than five contiguous states.

Yours very truly,

WILL WILSON
Attorney General of Texas

By
Marietta McGregor Payne
Assistant

MMcGP:jp

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

Henry Braswell
Riley Eugene Fletcher
John Reeves
T. B. Wright

REVIEWED FOR THE ATTORNEY GENERAL
By: Houghton Brownlee, Jr.